# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**KRISTENA JACKSON,**

             **Plaintiff,**

v.

**BOARD OF COUNTY
COMMISSIONERS
OF THE COUNTY OF SHERMAN
COUNTY, KANSAS, et al.,**

             **Defendants.**

**Case No. 17-2511-DDC-GEB**

## MEMORANDUM AND ORDER

On January 2, 2018, plaintiff Kristena Jackson filed a First Amended Complaint

("Complaint"), against three defendants:  (1) the Board of County Commissioners of the County

of Sherman County, Kansas ("Sherman County"); (2) Northwest Kansas Ambulance Service

("NKAS"), and (3) AirMD, LLC d/b/a LifeTeam ("LifeTeam").  Doc. 16 at 1 (Compl. ¶¶ 2–4).

Plaintiff's lawsuit arises out of her discharge from her position as an Advanced Emergency

Medical Technician ("AEMT").  She asserts claims against defendants under the Family Medical

Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq.*, the Americans with Disabilities Act

Amendments Act ("ADAAA"), 42 U.S.C. §§ 12101, *et seq.*, Title VII of the Civil Rights Act of

1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, the Kansas Act Against Discrimination

("KAAD"), Kan. Stat. Ann. §§ 44-1001 *et seq.*, and the Fair Labor Standards Act ("FLSA"), 29

U.S.C. §§ 201 *et seq.*  Plaintiff also asserts a claim against defendant LifeTeam for violating

Kansas public policy.

Defendants have responded to the lawsuit by filing two, separate Motions to Dismiss

asserting that plaintiff's Complaint fails to state a claim for relief under Federal Rule of Civil

Procedure 12(b)(6).  Doc. 20 (defendants Sherman County and NKAS's Motion to Dismiss),

Doc. 22 (defendant LifeTeam's Motion to Dismiss).  Plaintiff has filed a single Response to

defendants' motions.  Doc. 29.  And defendants have submitted two, separate Replies.  Docs. 34,

35.

After considering the arguments and authorities presented in the parties' papers, the court

grants defendants' Motions to Dismiss in part and denies them in part.  The court grants

defendants' motions to dismiss plaintiff's state law claims because plaintiff has agreed to dismiss

them without prejudice.  The court also dismisses plaintiff's ADAAA discrimination claim based

on a disparate treatment or harassment theory because plaintiff has abandoned those theories.

And the court dismisses plaintiff's claim that defendants violated the FLSA because plaintiff

appears to concede that she has waived her claim by accepting a payment for unpaid wages

supervised by the Secretary of Labor.

The court denies the remainder of defendants' motions.  To put it politely, defendants'

remaining arguments for Rule 12(b)(6) dismissal are not well-taken.  Some of their arguments

seek dismissal based on pleading deficiencies that plaintiff cured when she filed her First

Amended Complaint.  Others ask the court to consider and weigh plaintiff's factual allegations—

something the court cannot do at the motion to dismiss stage.  The court would have anticipated

a more-targeted dismissal motion—one that challenged the claims that are clearly implausible

from the face of the Complaint and that plaintiff since has conceded.  Instead, defendants chose

to attack every claim in the Complaint.  This choice required defendants to assert arguments

about the merits of the case at the pleading stage, before discovery even had commenced.

Defendants' choice also required the court to consider a variety of arguments that are ill-suited

for a motion to dismiss.  Defendants' choice is not consistent with the purpose of Rule 1, which

directs federal courts to construe the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

## I.    Factual Background

The following facts are taken from plaintiff's Complaint. Doc. 16. The court accepts the facts asserted in the Complaint as true and views them in the light most favorable to plaintiff. *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (citing *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).

Plaintiff worked for defendants as an AEMT from October 1, 2013 until her discharge on May 6, 2016. In January 2016, a firefighter—also employed by defendants—asked plaintiff if she had a snow blower that he could borrow for fire training. Plaintiff said that she did, and she offered her snow blower for use during training.

On January 5, 2016, while plaintiff was retrieving her snow blower, she fell and broke her left ankle. An ambulance transported plaintiff to Hays Medical Center for surgery. Plaintiff was diagnosed with a trimalleolar fracture dislocation (a three-part break) in her left ankle. Her injury required multiple surgeries, physical therapy, and significant healing time. Also, since her injury, plaintiff has suffered chronic pain on a daily basis.

After her fall, plaintiff contacted defendants to advise of her injury. She requested FMLA leave, and defendants granted her FMLA request. During the week of March 20, 2016, plaintiff spoke to Duanne Wright (plaintiff's Director) about her FMLA leave. Mr. Wright told plaintiff that she needed to speak to Ashley Mannis[1] because he believed plaintiff would exhaust her FMLA leave around March 27, 2016. Plaintiff asked Mr. Wright if she could return to work before exhausting her FMLA leave and perform activities that were less physically demanding,

---

[1]    The Complaint does not identify Ms. Mannis's employment position.

such as teaching training or CPR classes or performing administrative tasks.  Mr. Wright told

plaintiff that she could not return to work in any capacity until she had healed fully.  He also told

plaintiff that she could not return to work in any capacity until she was able to carry 175 pounds

without assistance.  And Mr. Wright advised plaintiff that she could not return to work in any

capacity until she was able to work in the field without any difficulties, including the ability to

walk on uneven surfaces and in ditches.

As Mr. Wright instructed, plaintiff met with Ashley Mannis to discuss her FMLA leave.

Plaintiff explained that she was on short term disability and asked if she could extend her FMLA

leave.  Ms. Mannis told plaintiff that she didn't understand how FMLA leave worked, and she

didn't know if plaintiff could extend her leave.  Ms. Mannis told plaintiff that she would get back

to her.  But she never did.

Plaintiff alleges that she believed that her employer had extended her FMLA leave.

According to the Complaint, after plaintiff exhausted her FMLA leave, she asked for an

additional two months of FMLA leave.  Doc. 16 at 6 (Compl. ¶ 52).  Defendants granted

plaintiff's request for the additional two months' leave.  *Id.*

In February 2016, Mr. Wright required plaintiff to come back to work on a Saturday and

a Sunday to teach a 24-hour refresher course.  Plaintiff taught the class while wearing a cast.

Plaintiff received no pay for her time.  She was told that her employer could not pay her because

she was on FMLA leave and collecting short-term disability.[2]

On April 11, 2016, plaintiff had another surgery.  On April 22, 2016, plaintiff had a

follow-up appointment with her surgeon.  Her surgeon advised that she could return to full duty

on May 1, 2016.

---

[2]        The Complaint never identifies who provided plaintiff with this information.

On May 4, 2016, plaintiff contacted Interim Director, Mike Johnson, and requested a meeting to discuss her return to work on May 5, 2016.  On May 4, 2016, plaintiff met with Mr. Johnson and Eric Albright, Billing Manager.  When she entered the meeting, plaintiff asked several questions.  They included whether she needed to know anything before returning to work the next morning.  Mr. Johnson responded to plaintiff's questions by terminating her employment.  Plaintiff asked Mr. Johnson why defendants were terminating her employment.  Mr. Johnson replied that defendants were not required to give plaintiff any reasons for terminating her employment.  Plaintiff then gathered her belongings and left the office.  On May 5, 2016, defendants posted plaintiff's AEMT position.

Plaintiff filed Charges of Discrimination against defendants with the Equal Employment Opportunity Commission ("EEOC") and the Kansas Human Rights Commission ("KHRC").  The Complaint alleges that defendants represented in their response to the EEOC and KHRC that defendants terminated plaintiff because she was the weakest employee of all the EMS crews and she had exhibited other performance problems.  *See* Doc. 16 at 12 (Compl. ¶¶ 107, 108).  The Complaint also cites an Affidavit that Ms. Mannis provided to the EEOC and KHRC.  It describes an attached exhibit as a Final Warning that was contained in plaintiff's employment file when Mr. Johnson became the Interim Director in April 2016.  *Id.* at 13 (Compl. ¶ 113).  Ms. Mannis explains, though, that she had learned—but just recently and after plaintiff's termination—that the former Director prepared this written warning but never provided it to plaintiff.

According to plaintiff, Mr. Wright never gave plaintiff any warnings during her employment.  Likewise, he never demoted her as part of any discipline.  To the contrary, plaintiff alleges, in June 2017, Mr. Wright gave her a written reference that spoke in positive terms about

her job performance.  And it recited that plaintiff "would be a great addition to your team."  *Id.* at

13 (Compl. ¶ 114).

## II.    Legal Standard

Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain "a short and plain

statement of the claim showing that the pleader is entitled to relief."  Although this Rule "does

not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels

and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the

Supreme Court explained simply, "will not do."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

For a complaint to survive a motion to dismiss under Rule 12(b)(6), the pleading "must

contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on

its face.'"  *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Id.* at 678 (citing *Twombly*,

550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks

for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*,

550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188,

1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not

merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

When considering whether a plaintiff has stated a plausible claim, the court must assume

that the complaint's factual allegations are true.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550

U.S. at 555).  But the court is "'not bound to accept as true a legal conclusion couched as a

factual allegation.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  "'Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Also, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).

### III.    Analysis

Defendants assert three arguments that—the court agrees—require dismissal of some of plaintiff's claims. *First*, defendants ask the court to dismiss plaintiff's state law claims under the KAAD and for violation of public policy. Defendants Sherman County and NKAS assert that the court lacks subject matter jurisdiction over the public policy claim because plaintiff never provided the requisite notice under Kan. Stat. Ann. § 12-105b. These defendants also seek dismissal of plaintiff's KAAD claim on the merits because, they contend, plaintiff's Complaint alleges no facts asserting a plausible KAAD claim. Defendant LifeTeam seeks dismissal of both state law claims on the merits. Plaintiff responds, conceding that she "is willing to dismiss her state law claims without prejudice." Doc. 29 at 1. Defendant LifeTeam's Reply asks for a dismissal with prejudice. "The decision whether to dismiss with or without prejudice is within the court's discretion." *Mace v. Louisville Ladder, Inc.*, No. 92-1416-FGT, 1994 WL 17526, at *1 (D. Kan. Jan. 14, 1994) (citing 9 Wright & Miller, *Federal Practice and Procedure* § 2367 (1971)). Exercising its discretion here and to avoid a merits determination at the pleading stage, the court dismisses plaintiff's state law claims without prejudice.

*Second*, as discussed in more detail in Part III.D. below, the court dismisses plaintiff's ADAAA discrimination claim based on either a disparate treatment or harassment theory because plaintiff appears to have abandoned her discrimination claim under those theories. But

the court denies defendants' request to dismiss plaintiff's ADAAA discrimination claim that is based on her termination.

*Third*, defendants assert that plaintiff fails to allege a plausible FLSA claim because she has waived her right to bring a claim by previously accepting a payment for unpaid wages. Plaintiff's Complaint asserts that the Kansas Department of Labor[3] has found that defendants were not paying their employees properly. Doc. 16 at 12 (Compl. ¶ 109). And, she asserts, she received a check for unpaid wages based on defendants' improper compensation practices. *Id.* (Compl. ¶ 110). Under the FLSA, an employee waives her right to bring a private cause of action under the FLSA when she accepts the payment of unpaid wages supervised by the Secretary of Labor. 29 U.S.C. § 216(c). Plaintiff's Response never responds to defendants' wavier argument. Thus, the court finds that she has abandoned any claim for FLSA violations. The court thus dismisses plaintiff's FLSA violation claim.

Plaintiff's Response asserts that the FLSA still permits her to pursue a retaliation claim. Although one can make a retaliation claim based on the FLSA, *see* 29 U.S.C. § 215(a)(3), plaintiff's Count VII asserts a claim for a FLSA violation. It does not assert a retaliation claim. And, even if plaintiff had asserted a retaliation claim, her Complaint fails to allege facts capable of supporting a plausible inference that defendants retaliated against her in violation of the FLSA. To allege a prima facie case of FLSA retaliation, an employee must assert: "(1) she engaged in protected activity under FLSA, (2) she suffered an adverse employment action contemporaneous with or subsequent to the protected activity, and (3) a causal connection between the protected activity and the adverse employment." *Pacheco v. Whiting Farms, Inc.*,

---

[3]     Defendants assert that the Complaint's reference to the Kansas Department of Labor is a typographical error. Instead, they contend, the United States Department of Labor conducted the investigation of FLSA violations—consistent with the authority conferred by this federal statute.

365 F.3d 1199, 1206 (10th Cir. 2004). Plaintiff's Complaint never alleges that she engaged in any protected activity such as filing an FLSA complaint or otherwise asserting her rights under that Act. Without such allegations, plaintiff cannot state a plausible FLSA retaliation claim.

Defendants' remaining dismissal arguments have no merit. The court addresses each one separately, below.

### A. Plaintiff's First Amended Complaint Properly Has Removed Sherman County, Kansas as a Named Defendant.

First, defendant Sherman County asserts that "Sherman County" is not an entity subject to suit under Kansas law. Kan. Stat. Ann. § 19-105 requires: "In all suits or proceedings by or against a county, the name in which the county shall sue or be sued shall be 'The board of county commissioners of the county of _____[.]'" Here, plaintiff's original Complaint named Sherman County, Kansas as a defendant. Doc. 1 at 1 (Compl. ¶ 2). But plaintiff has amended her Complaint, substituting the Board of County Commissions of the County of Sherman County, Kansas as a defendant. Doc. 16 at 1 (Compl. ¶ 2). The substitution conforms with Kan. Stat. Ann. § 19-105's requirement. Because the Complaint no longer names Sherman County, Kansas, as a defendant, the court denies as moot the motion to dismiss all claims asserted against Sherman County, Kansas.[4]

---

[4] The court recognizes that the amended Complaint's caption incorrectly lists defendants as "Sherman County, Kansas, *et al.*" Doc. 16 at 1. Fed. R. Civ. P. 10(a) requires a complaint to name all parties in the caption. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties; the title of other pleadings, after naming the first party on each side, may refer generally to other parties."). The court orders plaintiff to file a Second Amended Complaint that—consistent with Rule 10(a)— correctly lists the three named defendants (identified in the Complaint's paragraphs 2, 3, and 4) in the caption.

**B.  Plaintiff Has Satisfied Her Prima Facie Burden of Establishing That Defendant NKAS is Subject to Suit.**

Next, defendant NKAS asserts that it is a subordinate government agency not subject to suit.  Under Fed. R. Civ. P. 17(b), federal courts determine a party's capacity to be sued in federal court by examining the law of the state where the court is located.  Fed. R. Civ. P. 17(b)(3).  In Kansas, "subordinate government agencies do not have the capacity to sue or be sued in the absence of statute."  *Hopkins v. State*, 702 P.2d 311, 316 (Kan. 1985) (holding that the Kansas Highway Patrol is a government agency not subject to suit); *see also Brown v. Sedgwick Cty. Sheriff's Office*, 513 F. App'x 706, 707–08 (10th Cir. 2013) (holding that the Sedgwick County Sheriff's Office is a governmental subunit not subject to suit).

Although defendants have styled their motions as ones under Rule 12(b)(6), defendant NKAS's argument here asserts that the court lacks personal jurisdiction over NKAS because it is not an entity subject to suit.  See Doc. 34 at 3 (asserting that plaintiff bears the burden to establish personal jurisdiction over a defendant).  When a court considers a pre-trial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, a plaintiff need only make a prima facie showing of jurisdiction to defeat the motion.  *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056–57 (10th Cir. 2008).  "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."  *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

Here, defendants merely have made the conclusory assertion that NKAS is a subordinate government agency.  But plaintiff has come forward with allegations and other materials[5]

---

[5]     Since defendants base this argument on a lack of personal jurisdiction—not failure to state a claim under Rule 12(b)(6)—the court can consider these "other written materials" to determine if plaintiff has demonstrated facts that, if true, would support jurisdiction over NKAS.  *OMI Holdings*, 149 F.3d at

sufficient to allow her claim to proceed against this entity. For example, plaintiff's Complaint identifies NKAS as an entity authorized to do business in the State of Kansas with an address in Goodland. Doc. 16 at 1 (Compl. ¶ 3). And her Response asserts that NKAS individually submitted a position statement to the EEOC. Doc. 29 at 5. Plaintiff contends that the EEOC response never asserted that NKAS was a subordinate government entity. Also, plaintiff has submitted documents she found on the internet showing that NKAS could have some connection with Goodland Regional Medical Center or LifeTeam. Docs. 29-5, 29-6. Finally, plaintiff offered to dismiss her claims against NKAS "[u]pon proof that NKAS is a subordinate government interest not subject to suit." Doc. 29 at 6 (internal quotation marks omitted). But it doesn't appear that NKAS ever provided plaintiff any such proof.

Instead, NKAS's Reply simply attacks the written materials that plaintiff submitted with her Response as doing "nothing to prove that NKAS is an entity subject to suit." Doc. 34 at 4. But, at this stage of the litigation, plaintiff need not *prove* that NKAS is an entity subject to suit. Instead, she only needs to make a prima facie showing of jurisdiction. And she has done so. NKAS offers nothing to rebut that prima facie showing so, on this record, the court declines to dismiss defendant NKAS from the lawsuit.

### C. Plaintiff Has Stated Plausible FMLA Claims.

Next, defendants assert plaintiff has failed to allege facts supporting plausible FMLA interference and retaliation claims. The court addresses each FMLA claim separately.

---

10. Also, defendant LifeTeam does not object to the court taking judicial notice of these materials. *See* Doc. 35 at 3 (citing *Marten Transp. Ltd. v. Plattform Advert., Inc.*, No. 14-2464-JWL, 2016 WL 1718862, at *4 (D. Kan. Apr. 29, 2016) (noting that the Tenth Circuit has "sanctioned taking judicial notice of factual information on the internet")).

### 1. FMLA Interference

First, defendants contend, the Complaint never alleges a plausible FMLA interference claim because defendants never interfered with plaintiff's right to take FMLA. Instead, defendants contend that the Complaint alleges that plaintiff requested FMLA leave and that defendants granted that request.

The FMLA allows a qualified employee to take up to 12 weeks of job-protected leave during a 12-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA prohibits an employer from interfering with, restraining, or denying an employee's exercise of her FMLA rights. 29 U.S.C. § 2615(a)(1).

"[O]n return from such leave," eligible employees are entitled "(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1). But, "[i]f the employee is unable to perform an essential function of the position because of a physical or mental condition . . . the employee has no right to restoration to another position under the FMLA." 29 C.F.R. § 825.216(c).

To assert an FMLA interference claim, an employee must allege that (1) she was entitled to FMLA leave, (2) an adverse action by her employer interfered with her right to take FMLA leave, and (3) this adverse action was related to the exercise or attempted exercise of the employee's FMLA rights. *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 978 (10th Cir. 2017) (citation omitted).

Here, defendants assert, plaintiff's Complaint alleges no facts capable of supporting a finding or inference of the second and third elements of an FMLA interference claim.  Doc. 21 at 8; Doc. 23 at 7.  Defendants argue that plaintiff's Complaint concedes that she exhausted her FMLA leave and was not able to return to full duty until two months after her FMLA leave expired.  Thus, defendants contend, they never interfered with her FMLA rights.  The court disagrees.  Although plaintiff alleges that she was unable to return to full duty upon exhausting her FMLA leave, she never alleges that working full duty was an essential function of the job.  To the contrary, plaintiff alleges that she was able to perform the essential functions of her job.  Doc. 16 at 16 (Compl. ¶ 142).  The Complaint also alleges that plaintiff offered to return to work to perform certain job functions—such as training and administrative tasks.  And plaintiff alleges that she did return to work in February 2016, to teach a 24-hour refresher course.  But, when defendants otherwise refused plaintiff's offer to return to work in a limited capacity, plaintiff alleges that defendants granted her an additional two months' worth of leave.  She also alleges that, shortly before her leave expired, she spoke with Ashley Mannis about her FMLA leave.  Plaintiff alleges that Ms. Mannis told her that she didn't know how FMLA worked and that she was unsure if defendants would extend plaintiff's leave.  Ms. Mannis also told plaintiff that she'd get back to plaintiff, but she never did.

Plaintiff cites a summary judgment case that she says has similar facts to the ones she alleges in her Complaint.  In *Considine v. Willimansett East SNF*, 213 F. Supp. 3d 253 (D. Mass. 2016), an employer moved for summary judgment against a plaintiff's FMLA interference claim because the plaintiff took 12 weeks of FMLA leave and, at the end of her leave, was unable to return to her job on a full-time basis.  *Id.* at 263.  The court declined to grant summary judgment. *Id.*  Although the court recognized that the plaintiff had received her full 12 weeks of FMLA

leave, a factual dispute existed whether working full-time was an essential function of her job. *Id.* Also, the *Considine* plaintiff had offered to come back to work "at least part time" and told her employer that she could "get around in [her] wheel chair." *Id.* (citation and internal quotation marks omitted). On the summary judgment record, the court could not determine if walking—instead of using a wheelchair—was an essential function of the job. *Id.* So, the court held that "a jury could find Defendant interfered with Plaintiff's FMLA rights by failing to restore her to her position, or an equivalent one, at the conclusion of her FMLA leave." *Id.* at 263.

Likewise, the Third and Sixth Circuits have held that an employer was not entitled to summary judgment against an FMLA interference claim when the summary judgment record presented disputed fact issues about the plaintiff's ability to perform essential functions of the job after FMLA exhaustion. *See Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 256 (3d Cir. 2014) (reversing summary judgment entered against an FMLA interference claim because "[g]enuine issues of material fact exist[ed] . . . whether [plaintiff] could not perform an essential function of her job"); *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 429 (6th Cir. 2014) (concluding that the summary judgment record contained "ample evidence that [plaintiff] might have had difficulty returning to work within twelve weeks of his . . . request for FMLA leave" but "it is not indisputable that he would have been unable to do so" and thus reversing an order awarding summary judgment against plaintiff). Such a disputed issue, in turn, creates a triable issue for the jury to decide whether the employer interfered with the plaintiff's FMLA rights by not restoring her to her employment position. *See Budhun*, 765 F.3d at 255 (holding that plaintiff had "adduced enough evidence to allow a reasonable jury to conclude that she could, in fact, perform [her job's] essential function" and this showing precluded summary

14

judgment against her FMLA interference claim); *see also Demyanovich*, 747 F.3d at 429 (explaining that "'[t]he right to reinstatement guaranteed by 29 U.S.C. § 2614(a)(1) is the linchpin of the [interference claim] because the FMLA does not provide leave for leave's sake, but instead provides leave with an expectation that an employee will return to work after the leave ends.'" (quoting *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006)) (alternations in original)).

Although these cases are not binding precedent, their reasoning is persuasive.  And the court predicts the Tenth Circuit would apply them to the facts here—especially on a motion to dismiss where the court must take plaintiff's allegations as true and construe them in her favor. Also, the court has not found any Tenth Circuit or District of Kansas cases involving facts similar to those plaintiff alleges here.  Indeed, most of the cases defendants cite as support for their motions to dismiss involve summary judgment decisions where the factual record established—as a matter of law—that the employee had exhausted all FMLA leave and could not return to work because he could not perform the essential functions of the job.  *See, e.g.*, *Walker v. Adronics/Elrob Mfg. Corp.*, No. 11-1086-JAR, 2011 WL 6740546, at *4 (D. Kan. Dec. 22, 2011) (granting summary judgment against an FMLA interference claim because the undisputed facts established that plaintiff "was unable to perform the lifting, twisting, turning and pulling she had been routinely performing in her job" and thus had no right to reinstatement); *Degraw v. Exide Techs.*, 744 F. Supp. 2d 1199, 1215–16 (D. Kan. 2010) (granting summary judgment against an FMLA interference claim because plaintiff's FMLA leave expired before his doctor released him to return to work); *Mondaine v. Am. Drug Stores, Inc.*, 408 F. Supp. 2d 1169, 1206 (D. Kan. 2006) (granting summary judgment against an FMLA interference claim because the

employer was not required to restore employee to an equivalent position with equivalent hours when she was unable to work until three weeks after her FMLA leave had expired).

And, on the limited occasions when our court has dismissed FMLA interference claims at the pleading stage, it did so because the plaintiffs had alleged facts demonstrating that they were not entitled to job restoration because their allegations showed they could not perform essential functions of their jobs after exhausting FMLA leave. *See Peoples v. Langley/Empire Candle Co.*, No. 11-2469-CM-JPO, 2012 WL 171340, at *3–4 (D. Kan. Jan. 20, 2012) (holding that plaintiff failed to state a claim for FMLA interference because her Complaint alleged that she received a Notice advising her that her FMLA leave was approved and that, to be restored to her employment, she was required to present a fitness-for-duty certificate but plaintiff's Complaint conceded that she never returned to work with the required certificate because she had miscalculated her FMLA leave); *Smith v. Blue Dot Servs. Co.*, 283 F. Supp. 2d 1200, 1205 (D. Kan. 2003) (dismissing FMLA interference claim because "plaintiff's complaint shows that he was provided a full twelve weeks of FMLA leave, that his leave period expired before he was able to return to work with a physician's release, and that he was terminated only after the leave period expired").

In contrast, plaintiff's asserted facts here, assumed as true and construed in her favor, establish that plaintiff could perform the essential functions of her job and she offered to return to work in a limited capacity. Defendants refused to restore plaintiff to her job, granted her additional leave, and then later terminated her employment. These facts are capable of supporting a finding or inference of FMLA interference. Naturally, before plaintiff can prevail on these claims, she must come forward with evidence to prove her allegations. But, at the

pleading stage, they suffice to survive Rule 12(b)(6) dismissal. The court thus denies defendants' motions to dismiss plaintiff's FMLA interference claim.

## 2. FMLA Retaliation

Next, defendants argue that the Complaint never asserts a plausible FMLA retaliation claim. An FMLA retaliation claim is analyzed under the familiar *McDonnell Douglas* burden shifting approach. *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006). Under this framework, the plaintiff bears the initial burden of making a prima facie case for retaliation. *Id.* If plaintiff satisfies that burden, the burden then shifts to the defendant to prove a legitimate, non-discriminatory reason for its adverse employment decision. *Id.* If the defendant meets that burden, the plaintiff must show that defendant's proffered reason is pretext. *Id.* A prima facie case of retaliation requires that: (1) plaintiff engaged in protected activity; (2) the defendant took action that a reasonable employee would consider adverse; and (3) a causal connection exists between the protected activity and the adverse action. *Id.*

Defendants argue that plaintiff's FMLA retaliation claim fails because her Complaint never alleges facts establishing a causal connection between her January 5, 2016 request for FMLA leave and her May 5, 2016 termination. Defendants assert that the Complaint pleads no facts showing that they harbored any ill will toward plaintiff for taking FMLA leave. Instead, defendants assert, plaintiff alleges that defendants granted her leave and allowed her to take an additional two months' leave. Defendants also contend that plaintiff's termination was not based on her FMLA leave because the Complaint describes plaintiff's performance issues that defendants provided after-the-fact to the EEOC and KHRC to justify the termination. And, defendants contend, plaintiff's termination in May 2016 was not in close temporal proximity to the FMLA leave she requested in January 2016 and exhausted in March 2016.

17

Arguments of this type are not appropriate on a motion to dismiss. In making these arguments, defendants invite the court to weigh the Complaint's factual assertions and draw inferences supported by those allegations against plaintiff. That's not the court's role on a motion to dismiss. Instead, construing plaintiff's allegations in her favor, she alleges that she exhausted her FMLA leave, defendants granted her an additional two months' leave, and then terminated her employment the day before she was planning to return to work. Plaintiff also alleges that defendants never provided her any reason for the termination. Instead, Mr. Johnson told her that defendants did not need to give her any reasons for terminating her employment. But later, defendants told the EEOC and KHRC that they fired plaintiff based on poor performance. Plaintiff alleges that defendants' proffered reason to the EEOC and KHRC was pure pretext designed to conceal their retaliatory motive. These facts are more than sufficient to state a plausible FMLA retaliation claim. The court denies defendants' motions to dismiss this claim.

### D.  Plaintiff Has Stated Plausible ADAAA Claims.

Defendants next ask the court to dismiss plaintiff's ADAAA claims. *First*, defendants assert that plaintiff's ADAAA claims fail because her Complaint never alleges a disability.

The ADAAA prohibits discrimination "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). In 2008, Congress passed the ADAAA "with the stated goal of ensuring that [t]he definition of disability . . . be construed in favor of broad coverage." *Adair v. City of Muskogee*, 823 F.3d 1297, 1305 (10th Cir. 2016) (citation and internal quotation omitted). To meet this goal, Congress amended the definition of the term "disability" in the ADAAA. *Id.* Under the ADAAA's amended definition, "[t]he term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or

more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ."  42 U.S.C. § 12102(1).  "Whether an individual is disabled under the [ADAAA] is 'a highly fact sensitive issue, requiring an individualized inquiry and case-by-case determination.'"  *Bethscheider v. Westar Energy*, No. 16-4006-CM, 2017 WL 131608, at *3 (D. Kan. Jan. 13, 2017) (quoting *Dutton v. Johnson Cty. Bd. of Cty. Comm'rs*, 859 F. Supp. 498, 506 (D. Kan. 1994)).

Plaintiff asserts that she sufficiently has alleged that her ankle injury constituted a disability under all three subsections of § 12102.  To assert a disability within the meaning of subsection (A), "a plaintiff must 'articulate with precision' both her impairment and the major life activity it substantially limit[s]."  *Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1218 (10th Cir. 2010) (quoting *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1129 (10th Cir. 2003)).  The Tenth Circuit has construed "the phrase 'substantially limiting' to require an impairment that renders an individual either unable or significantly restricted in ability to perform a major life activity 'compared to the average person in the general population.'"  *Rhodes v. Langston Univ.*, 462 F. App'x 773, 778 (10th Cir. 2011) (quoting *Johnson*, 594 F.3d at 1218).  The ADAAA includes the following in the definition of major life activity:  caring for oneself, performing manual tasks, sleeping, walking, standing, lifting, bending, concentrating, and working.  42 U.S.C. § 12102(2)(A).

Here, plaintiff's Complaint alleges that she sustained a three-part break of her ankle that has required multiple surgeries and physical therapy.  She alleges that a person who experiences a trimalleolar fracture—like the one plaintiff sustained—can require as long as two years to recover and can sustain permanent changes in her abilities to perform certain activities.  Plaintiff alleges that she suffers from daily chronic pain and arthritis in her leg that will continue for the

rest of her life.  Plaintiff asserts that her physical and psychological impairments substantially limit "the major life activities of, including, but not limited to, working, sleeping, lifting, walking, bending and concentrating."  Doc. 16 at 10 (Compl. ¶ 87).  Plaintiff also alleges that her ankle impairment is neither transitory nor minor.  These allegations are more than sufficient to state plausible allegations of a disability within the meaning of subsection (A).

Defendants disagree, asserting that plaintiff's allegations about her ankle injury support, at most, a temporary condition that does not qualify as a disability.  But, in their Replies, defendants concede that the 2008 amendments to the ADAAA recognize that "an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of [the ADAAA]."  29 C.F.R. § 1630.2(j)(1)(ix).  Nevertheless, citing summary judgment cases, they argue that courts still find that injuries like broken bones are temporary conditions that do not qualify as disabilities under the ADAAA.  *See*, *e.g.*, Doc. 23 at 15 (citing *Peterson v. Garmin Int'l, Inc.*, 833 F. Supp. 2d 1299, 1318 (D. Kan. 2011) (granting summary judgment against an ADAAA claim because the undisputed facts established that plaintiff's shoulder and bowel conditions were temporary impairments)).  On a motion to dismiss, the court cannot engage in that analysis.  Instead, taking plaintiff's allegations as true and construing them in her favor, the Complaint sufficiently alleges facts capable of supporting a finding or inference that plaintiff's ankle condition was more than an temporary impairment.  It thus could qualify as a disability under the ADAAA.

Defendants also contend that plaintiff fails to allege that her condition substantially limited any major life activity because the Complaint also alleges she was released to work full duty "as an EMT—a job well known to involve extensive physical activity."  Doc. 21 at 15.  Arguments like this one ask the court to consider facts beyond the scope of the Complaint's

factual allegations.  And they are improper on a motion to dismiss.  Plaintiff has alleged that her

ankle condition—even after she secured a release to return to full duty—still substantially

limited her ability to perform the major life activities of working, sleeping, lifting, walking,

bending, and concentrating.  These allegations suffice to state an ADAAA disability under

subsection (A).

The Complaint also alleges sufficiently a disability under subsection (B).  To assert a

disability within the meaning of subsection (B), a plaintiff must "have 'a history of an

impairment that substantially limited one or more major life activities when compared to most

people in the general population . . . ."  *Paraham v. Atriums Mgmt. Co., Inc.*, No. 16-2539, 2018

WL 691000, at *5 (D. Kan. Feb. 2, 2018) (quoting 29 C.F.R. § 1630.2(k)(2)).  Here, plaintiff

alleges that she reported her medical condition to defendants by requesting a leave of absence to

treat her ankle condition—a condition that substantially limits one or more major life activities.

She asserts that these allegations suffice to allege plausibility that she had a record of

impairment.  The court agrees.  *See McKenzie v. Dovala*, 242 F.3d 967, 972–73 (10th Cir. 2001)

(holding on summary judgment that plaintiff's "record of absence from work on administrative

leave, along with her physicians' reports, tends to show that her ability to work was substantially

limited by her illness" and thus "could lead a reasonable jury to conclude that she had a record of

a disability for purposes of the ADA").

Finally, the Complaint sufficiently alleges a disability under subsection (C).  To allege a

disability within the ambit of subsection (C)—that her "employer regarded [her] as having an

impairment"—a plaintiff must assert that "(1) [she] has an actual or perceived impairment, (2)

that impairment is neither transitory nor minor, and (3) the employer was aware of and therefore

perceived the impairment at the time of the alleged discriminatory action."  *Adair*, 823 F.3d at

1306. To state a claim under this subsection, a plaintiff "no longer needs to plead and prove that the actual or perceived impairment substantially limited one or more major life activities." *Id.* (citations and internal quotation marks omitted). But a plaintiff must allege that the impairment is not "'transitory and minor.'" *Id.* (quoting 42 U.S.C. § 12102(3)(B)). A transitory impairment is one "with an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B). Defendants challenge whether plaintiff has alleged an impairment that is more than transitory or minor. But, yet again, their arguments rest on factual determinations that the court cannot make on a motion to dismiss. For the same reasons discussed above, the court finds that plaintiff's allegations suffice to state a claim that her impairment is neither transitory nor minor. And the court concludes that plaintiff has alleged plausibly that her employer regarded her as having an impairment.

*Second*, defendants argue that, even if plaintiff is disabled under the ADAAA, plaintiff fails to state a plausible ADAAA claim based on failure to accommodate. To state a failure to accommodate claim, a plaintiff must allege that: "(1) she is disabled; (2) she is 'otherwise qualified'; and (3) she requested a plausibly reasonable accommodation." *Sanchez v. Vilsack*, 695 F.3d 1174, 1177 (10th Cir. 2012). The ADAAA's implementing regulations define "reasonable accommodation" as:

> (i) Modifications or adjustments to a job application process that enable a qualified applicant with a disability to be considered for the position such qualified applicant desires; or
>
> (ii) Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position; or
>
> (iii) Modifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities.

29 C.F.R. § 1630.2(o).  But the regulations do not require an employer to provide a reasonable

accommodation that imposes an "undue hardship" considering the cost, financial resources, and

the operation of the entity.  29 C.F.R. § 1630.2(p).

Defendants assert that plaintiff fails to allege a plausible failure to accommodate claim

because the Complaint concedes that they provided a reasonable accommodation to plaintiff in

the form of leave.  The court disagrees for two reasons.  First, one can infer from plaintiff's

Complaint that defendants did not accommodate plaintiff by providing her leave.  Although

defendants granted plaintiff her request for leave, plaintiff alleges that defendants fired her while

she still was on leave—the day before she was scheduled to return to work.  So, defendants never

granted plaintiff her full, allotted leave—and thus never provided the accommodation she

requested.  *See*, *e.g.*, *Benmovich v. Fieldston Operating LLC*, No. 11 Civ. 780(RA), 2013 WL

1189480, at *7–8 (S.D.N.Y. Mar. 22, 2013) (denying summary judgment motion because

disputed issues of fact existed whether defendants "failed to provide a reasonable

accommodation and engage in an interactive process with [plaintiff]" when defendants

terminated plaintiff while on leave).  Second, plaintiff alleges that she asked Mr. Wright if she

could return to work before exhausting her FMLA leave and perform activities that were less

physically demanding, such as teaching training or CPR classes or performing administrative

tasks.  Plaintiff alleges that defendants failed to accommodate her request and failed to engage in

an interactive process with her.  *See Wilkerson v. Shinseki*, 606 F.3d 1256, 1265 (10th Cir. 2010)

(explaining that the ADAAA implementing regulations "'envision an interactive process that

requires participation by both parties.'" (quoting *Templeton v. Neodata Servs., Inc.*, 162 F.3d

617, 619 (10th Cir. 1998))).  These allegations suffice to state a failure to accommodate claim.

Defendants respond that plaintiff's request to Mr. Wright for accommodation wasn't really a

23

request for a reasonable accommodation but, instead, a request that defendants "create a different job for her."  Doc. 35 at 11.  Once again, defendants' argument requires the court to make factual determinations at the pleading stage—something it cannot do.  The court thus rejects this argument.

*Third*, defendants argue that plaintiff has failed to alleged a plausible ADAAA discrimination claim.  To allege an ADAAA discrimination claim, "a plaintiff generally must show that [s]he has suffered an 'adverse employment action because of the disability.'" *EEOC v. C.R. Eng., Inc.*, 644 F.3d 1028, 1038 (10th Cir. 2011) (quoting *Mathews v. Denver Post*, 263 F.3d 1164, 1167 (10th Cir. 2001)).  An adverse action is one that produces "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc., v. Ellerth*, 524 U.S. 742, 761 (1998).  The court considers whether an action is adverse on a case-by-case basis, using an objective standard and "'examining the unique factors relevant to the situation at hand.'"  *McGowan v. City of Eufala*, 472 F.3d 736, 742 (10th Cir. 2006) (quoting *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998)).

Here, plaintiff's Complaint alleges that defendants "subjected [her] to disparate treatment, harassment, and/or termination . . . because of her disability."  Doc. 16 at 18 (Compl. ¶ 153).  Defendants argue that plaintiff's Complaint alleges no facts supporting her disparate treatment or harassment claims.  Plaintiff never responds to these arguments in her Response. *See generally* Doc. 29.  So, the court assumes that plaintiff has abandoned any such claims.  And it dismisses any ADAAA discrimination claims based on disparate treatment or harassment theories.

But, the court agrees with plaintiff—as she asserts in her Response—that she sufficiently has alleged an adverse employment action based on her termination.  Taking plaintiff's allegations as true and construing them in her favor, she has alleged facts capable of supporting a finding or inference that defendants terminated her employment because of her disability, *i.e.*, her ankle condition.  Defendants terminated plaintiff's employment one day before she was scheduled to return to work after taking time off to treat her disability.  Defendants refused to provide plaintiff a reason at termination, but later, they told the EEOC and KHRC that plaintiff had performance issues.  But, plaintiff alleges, she never received any negative feedback from her employer.  And, she alleges, Ms. Mannis told the EEOC and KHRC that plaintiff never received a Final Warning criticizing her performance.  A reasonable jury could infer from these factual allegations that defendants terminated plaintiff's employment because of her disability.

*Finally*, defendants assert that plaintiff fails to state a plausible ADAAA retaliation claim. "To establish a prima facie case of ADAAA retaliation, a plaintiff must prove that (1) [s]he 'engaged in a protected activity'; (2) [s]he was 'subjected to [an] adverse employment action subsequent to or contemporaneous with the protected activity'; and (3) there was 'a causal connection between the protected activity and the adverse employment action.'"  *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1186–87 (10th Cir. 2016) (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999)).  Plaintiff's Complaint sufficiently alleges facts supporting each of the required elements of an ADAAA retaliation claim.

First, plaintiff alleges that she engaged in protected activity by requesting reasonable accommodations.  Defendants concede that requesting reasonable accommodations is protected activity under the ADAAA.  Doc. 35 at 16 (citing *Blakely v. Cessna Aircraft Co.*, 256 F. Supp. 3d 1169, 1174 (D. Kan. 2017)); *see also Foster*, 830 F.3d at 1187 (holding that either of

plaintiff's two requests for reasonable accommodations "or a combination of both" sufficed to establish protected activity and precluded summary judgment against an ADA retaliation claim). But—as defendants have argued before—they assert that they provided reasonable accommodations to plaintiff in the form of leave time. For reasons already stated, the court again rejects this argument.

Next, plaintiff alleges the second element of a retaliation claim by asserting that defendants subjected her to an adverse employment action by terminating her employment. And last, plaintiff alleges a causal connection by asserting that defendants retaliated against her for exercising her rights under the ADA. Indeed, plaintiff alleges that she requested reasonable accommodations—both in the form of time off and by requesting to return to work in a modified job before her leave expired. She alleges that defendants failed to accommodate her request to return to work in the modified position and never engaged with her in an interactive process. And, while she alleges that defendants granted her request for time off, her Complaint also alleges that defendants fired her the day before she was scheduled to return to work. A reasonable jury plausibly could infer from the facts alleged that defendants fired plaintiff as retaliation for exercising her ADAAA rights.

With the exception of plaintiff's ADAAA claim based on disparate treatment and harassment—a claim that plaintiff abandoned—the court denies defendants' motions to dismiss plaintiff's ADAAA claim.

### E.  Plaintiff Has Stated a Plausible Title VII Discrimination Claim.[6]

Defendants assert that plaintiff's Complaint fails to state a plausible Title VII

discrimination claim. Title VII makes it unlawful "to discharge any individual, or otherwise to

discriminate against any individual with respect to [her] compensation, terms, conditions, or

privileges of employment, because of such individual's . . . sex . . . ."  42 U.S.C. § 2000e-2(a)(1).

To allege a prima facie case of discrimination, a plaintiff must allege that:  "(1) she is a member

of a protected class, (2) she suffered an adverse employment action, (3) she qualified for the

position at issue, and (4) she was treated less favorably than others not in the protected class."

*Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (citing *Sanchez v. Denver Pub.

Sch.*, 164 F.3d 527, 531 (10th Cir. 1998)).

Here, plaintiff alleges that:  (1) she is female, (2) she suffered an adverse employment

action in the form of her termination, (3) she was qualified for the position because she could

perform its essential functions, and (4) she was treated less favorably than others not in the

protected class (*see* Doc. 16 at 11 (Compl. ¶ 105)).  Defendants assert that plaintiff's Complaint

fails to allege specific facts supporting the fourth element.  Plaintiff responds that she has alleged

facts that allow a plausible inference of gender discrimination.  These facts include allegations

that two male employees fired plaintiff based on the recommendation of another male

employee—Mr. Wright.  The recommendation criticized plaintiff's work performance, including

her ability to get along with co-workers.  Plaintiff's Complaint also references a Final Warning

---

[6]       Defendants also seek dismissal of a Title VII retaliation claim.  Count V never asserts a separate
Title VII retaliation claim—only a Title VII *discrimination* claim.  Although plaintiff references
"retaliatory" conduct in Count V (*see* Doc. 16 at 21 (Compl. ¶ 172)), the court does not read her
Complaint as one alleging a separate Title VII retaliation claim.  The court thus denies defendants'
request to dismiss a Title VII retaliation claim as moot.  And, even if plaintiff had alleged a separate Title
VII retaliation claim, her Complaint never alleges that she engaged in protected activity under Title VII
such as complaining about gender discrimination.  So, any Title VII retaliation claim fails as a matter of
law.

that Mr. Wright purportedly created and placed in plaintiff's employment file but never provided to plaintiff.  And defendants replaced plaintiff with a male.

Defendants respond that the Final Warning was issued more than a year before plaintiff's termination and thus cannot support a plausible inference of discrimination.  Doc. 35 at 20.  But, to support this argument, they again cite summary judgment cases where the court was presented with a factual record that did not establish a temporal proximity.  *Id.*  The facts alleged here are different.  On a motion to dismiss, the court cannot engage in the analysis invited by defendants' motions.

Although a closer call, the court concludes that plaintiff's allegations are sufficient to allow a plausible inference of gender discrimination.  Plaintiff alleges that she was treated differently and less favorably than male employees.  Then, she describes how two men fired her from her employment based on the recommendation of another male employee who apparently never gave plaintiff a Final Warning that he wrote criticizing her performance.  Also, she alleges that a male was hired to replace her.  To prevail on her Title VII claim, of course, plaintiff eventually will have to come forward with evidence supporting her allegations that defendants treated her differently and less favorably than they treated her male counterparts.  But, at this stage, the court finds her allegations sufficient to survive defendants' motions to dismiss.

## IV.    Conclusion

For reasons explained above, the court dismisses:  (1) plaintiff's state law claims under the KAAD and for violation of public policy without prejudice; (2) plaintiff's ADAAA discrimination claims based only on a disparate treatment or harassment theory—and not on

plaintiff's termination; and (3) plaintiff's FLSA claim.  The court denies defendants' motions in all other respects.[7]

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants Sherman County and NKAS's Motion to Dismiss (Doc. 20) is granted in part and denied in part.

**IT IS FURTHER ORDERED THAT** defendant LifeTeam's Motion to Dismiss (Doc. 22) is granted in part and denied in part.

**IT IS FURTHER ORDERED THAT** plaintiff must filed a Second Amended Complaint that correctly identifies the three named defendants in the caption, consistent with Fed. R. Civ. P. 10(a).

**IT IS SO ORDERED.**

**Dated this 26th day of June, 2018, at Topeka, Kansas.**

> **s/ Daniel D. Crabtree**
> **Daniel D. Crabtree**
> **United States District Judge**

---

[7]    The last sentence of plaintiff's Response asks the court to allow her leave to amend if the court finds that her Amended Complaint is deficient.  Because the court only is dismissing claims that plaintiff has conceded—or, in the case of her purported FLSA retaliation claim, plaintiff has not asserted any facts to make her claim plausible—the court denies her request for leave to amend on any substantive basis. As already described, the court grants plaintiff leave to file a Second Amended Complaint but only to fix the caption as required by Rule 10(a).